Testing 1, 2, 3. Testing 1. Testing 1, 2, 3. Testing. Our visiting judge, Chief Judge McKinney of the Southern District of Indiana. We're delighted to have him here today. Thank you very much. You're welcome, Judge McKinney. We have three argued cases this afternoon, beginning with 065056, Walther v. HHS. Mr. Gage. May it please the court, counsel. I am working through a little laryngitis today, so I may be a little bit off. Your Honors, I want to start just to state my goal here. One of the things I want to do is try and get away from the generalities and hypotheticals that I think have affected the decisions below and talk about the specific record and how the law applies to that. I'm going to jump right into that. The whole thing in this case from the special master, it's on the last page of his decision. He talks about various cases that have held that this vaccine can cause this injury, and he says in each case, the child received just one vaccination preceding the onset of encephalomyelitis. In contrast, Dr. Walther received concurrently one table vaccine and many non-table vaccines, every one of which represented a biologically plausible explanation for a condition. That is his holding in this case. All of the vaccines are biologically plausible. That is not the standard as a matter of law. This court made it very clear in Knutson that, and if you remember Knutson, in that particular case, the child had a vaccine that could have caused the injury and also had a viral infection, everybody admitted, could have caused the injury. This court explicitly said in Knutson, biologically can cause is not enough. You have to show in a particular case that it was the cause. It's absolutely the law in this circuit and in the vaccine program. Special Master Edwards' decision is that we lose because there were other, not factors that were shown to be the cause in this case, but there were other things that were biologically plausible in this case. Well, you're saying that the improperly put the burden of proof on you to disprove alternative causation. Well, I mean, I certainly disagree with that burden, Your Honor, but given what's been said in Pafford, I'm not going to argue Pafford, I'm not going to re-argue Pafford at this point. But the fact is we put that evidence on, but the problem is with this decision, the root of the problem in this case is in order to have something that is a cause of a condition in this program, you have to show under Knutson and under the statute that it was a cause in this case. Wasn't all of the evidence that you put on with respect to DT causing the ADAM, wasn't that all discredited by the trial judge and wouldn't we have to defer to that, by the Special Master? Is there any evidence that you put on that it was the cause that wasn't discredited? Well, you have to, I guess we have to define our terms of discredited. The answer is, I mean the short answer is no. The fact is the Special Master never addressed the evidence. One of the other requirements, and it's legal error in this program, I cited the case Dickerson to you, and it relies on the statute itself, subsection 1381 of the statute. The Special Master has to make his decision on the record as a whole. The Special Master never addressed the evidence. He addressed Dr. Breyer's testimony, did he not, at some considerable length and detail? He didn't believe him, right? I mean, it's a credibility determination, but he, on page three of his opinion, he says, in his view, there are three criteria, three tests for determining whether it was causation. One is proof of biologic plausibility, and he seems to have found that that's true with respect to this vaccine. Second, proof within a medically acceptable time period, and he doesn't say anything about that. And then the proof eliminating other potential causes, and what you're saying, as I understand it, is that his decision rests on that third factor, right? Yes. Right. Did the government argue that the first two factors that he lists there were not satisfied? Did the government argue that there was not proof of biologic plausibility? They've maintained in their briefing that the DT vaccine has never been shown to cause this, but I don't believe the record supports that. Okay, and did they argue that it didn't occur within a medically acceptable time period? No, they did not. Okay. So the question is whether this testimony by, what's her name, Dr. Byers, is it? Yes, Byers. Byers, was properly disregarded, and if it was properly disregarded, whether there's sufficient evidence on this third factor to support an award. Okay, but the question is, what's the legal standard he applied? It's not a mystery. He put it in the decision. The reason that he says we didn't eliminate the other causes is because he said they were biologically plausible. He never said, he never made one finding ever that which one, why, what the evidence was to support that. He didn't even say that I had to, that they had to be proven to be a factor unrelated to the vaccine, that they didn't have to be proven in this case as the cause. He said all that has to happen in order to defeat my case is if there's something else out there that is biologically plausible, that's the language he used, that's the test he applied, and that is absolutely wrong as a matter of law. And what is the correct test? It's stated by this court in Knutson. It has to be shown in this case to be the actual cause. Everybody admitted in Knutson that the viral infection the child had... But who has to show, who's going to show that then? Does she, are you saying your client has to show them that it was not the actual cause? Or are you saying that the defendant, the government in this case, has to come up and then disprove it? I think the Pafford decision blurs that line, but I don't think we have to answer that question here. Suppose we do have to answer. Well, then the government, if the government is burdened, they lose. The only evidence they put on in this case was their expert in his, I believe it was his fourth report he filed, in one sentence said that he thought the yellow fever vaccine could cause this injury. And what if it's not the government's burden? What if it's her burden? Then we have, well, the fact is, luckily for me, I told my expert to address every one of those other causes. And you notice that undoubtedly in my brief. She submitted two written reports that addressed all the other causes and she testified about the other causes. We met that burden. But the special master didn't believe her. Didn't credit her testimony. What he did was he said that she didn't eliminate them as biologically plausible explanations. That's the standard he applied. That's one sentence at the end of the opinion. That's not to address each and every attack he made upon the doctor's testimony. He didn't address, I mean, if you want to get into the specifics of those, then pick one. It was the only one he actually got around to putting in his decision. And he didn't explain how the rabies vaccine was shown to be the cause in this case to comply with Knutson. So are you saying his standard, his test of biologically plausible was correct, but there was no evidence to support that legal conclusion? Or are you saying the standard he applied was incorrect? Well, both of them are incorrect. But biologically, if it's, I mean, think of it in the terms of Pafford. He's just been decided by this court. If it's my burden to eliminate all other causes, the only ones I'm going to eliminate are the ones that are biologically plausible. Because I could be here for the rest of my life trying to eliminate things that aren't biologically plausible. I mean, it's common sense. All he did was say, my expert identified the rabies vaccine as a biologically plausible agent. That's all she did. Then she said, it's biologically plausible. What I'm going to do now is I'm going to eliminate it as an actual cause in this case. And that's what she did. He didn't get to the actual cause standard, and he has to. He can't lower the standard for factoring related offenses to mere biological plausibility, and that is what he has done. But I'm confused. What if he heard all of the testimony that your expert put on and he didn't believe it? Wouldn't he have reached, assuming that, let's assume that, that he just didn't believe it? Rightly or wrongly, you may disagree with that, he didn't believe it. Wouldn't this have been his conclusion? And wouldn't that conclusion be correct if he were correct? If he actually complied with subsection 13A1 and the Dyckman decision that I cited to you, where he actually examines the record, makes his decision on the record as a whole, which is required by the statute and by our case law, so that you can say, and it's reviewable at that point, you have something to review, you take the rabies vaccine. He mentions that. There are other vaccines that he says are biologically plausible. He doesn't even name them, but he names the rabies vaccine. And he says, okay, in the record, the rabies vaccine was shown to be the cause in this case, and therefore it defeats the DT vaccine. You've got something to review. That's not, you can't just pigeonhole that into a discretionary ruling. As a matter of law, he is required to do that. He has to tell you the basis, and he has to do it on the record as a whole. He didn't do it. The only evidence in this record that was absolutely unrebutted was the rabies vaccine. So if you're saying, let me interrupt you on that point. You're saying that there was a deficiency in how much information he gave us. In other words, it's impossible to review. But the relief you're seeking here, unless I'm misunderstood, is not that we should, the relief for that is you've got a remanded court of appeals so that the special master can make specific findings that you are capable of reviewing. But you're not seeking that in this case. You're asking for a complete out-and-out reversal, correct? Well, I'd love an out-and-out reversal, and I think we have enough evidence in this record to warrant it. But you'd also love an out-and-out remand. It wouldn't bother me a bit. It would be a Christmas present. But, I mean, look at the standard. You're running into your rebuttal time. Do you want to save your rebuttal? I'll save a minute of it. Look at the standard. If it's only biological plausibility, if that's all it is, I guarantee you I, as a petitioner's counsel, cannot meet that standard. Vaccines deal with the immune system and the neurologic system. They're extraordinarily complicated. You can't have a vaccine injury where there isn't something else that is biologically plausible to be the cause. And if I have to comply with Paffert, tell me how to do it. If I have to say, okay, here's my list of biologically plausible causes that I'm going to eliminate in order to comply with Paffert, but by identifying them as biologically plausible, I lose because that's the only standard that has to be in this record in order to defeat my case. You've got to enforce Knutson. It has to be shown in this case that it was the cause. He's got to identify the vaccine. He's got to identify the evidence in the record that supports that that vaccine, not the DT vaccine, was the cause. That's what Knutson requires. In Knutson, it was a virus, and it was biologically plausible, and the petitioners won. And I'm put into an absolutely impossible position. If the standard is lowered to mere biological plausibility to defeat a vaccine case, I can't win it. It puts me in a catch-22 if I identify the thing I've lost. If I don't identify it, then I've lost because I didn't eliminate all the biologically plausible causes. On the other hand, if biological plausibility is the only thing that has to be shown, then that ought to be the standard for petitioners too, which I guarantee you it is not. We have to show that it was an actual cause in that case. Thank you. Okay, thank you, Mr. Gage. Why don't we restore two minutes of Mr. Gage's rebuttal time. Mr. Reagan? Thank you, Your Honor. Did I pronounce correctly? Romney, sir. Romney. May it please the Court, I'm Mark Robbie of the Justice Department, and I'm representing the Secretary of Public and Human Services. In the government's view, does this case turn on the burden of proof? No, sir, it doesn't. This is not a fact unrelated case as it was portrayed by the appellant. This is a case about credibility. But credibility on what issue? I pointed out to Mr. Gage this language at the bottom of page 3 of the special master's decision where he says I've got to look at three things, proof of biologic plausibility, and the special master seems to find that satisfying. And then he says proof of an injury that occurred within a medically acceptable time frame. The government didn't contest that. Time frame? Yeah. If the tetanus toxoid is a cause of this condition, then Dr. Walther's condition would have arisen within a temporally appropriate frame. Okay, so then he lists the third thing as proof eliminating other potential causes, and it's on that issue that Dr. Byers testified, and on which, as I understand it, the special master found her testimony not worthy of belief. Isn't that correct? That's essentially it, Your Honor. I would add something to that, and it's this. The parties agree, I believe, that the medical records alone don't establish that the TB vaccine caused Dr. Walther's condition. They relied on Dr. Byers' testimony. Dr. Byers, if her testimony was not credible, petitioners can't prevail. We have decisions by other special masters which were distinguished by the special master here, which did find that the PT vaccine caused this myeloid encephalitis, right? That's right, Your Honor. First of all, Dr. Walther was given a different vaccine. She was given the adult tetanus tox or the TD vaccine, but she was given several other vaccines at the same time. Right, that's the question. That's what in the special master's view distinguished these other cases, is that she had these other vaccines, but the burden of proof was on the claimant to show that these were not causative factors and that she didn't satisfy that burden, right? Absent Dr. Byers' testimony, petitioners could not have prevailed. But is my statement correct or incorrect, that the reason that he found these other cases distinguishable and held that causation had not been established here was because he thought that the claimant had to come up with evidence eliminating other causes, that the evidence that was offered for that was Dr. Byers' testimony and that Dr. Byers' testimony was not believable? Reasonable minds could differ on this, Your Honor, but I don't believe the special master's view of Dr. Byers' testimony was that narrow. The tetanus toxoid, even if it is a cause of conditions like ADEM, is not the only cause. In many cases of ADEM, no cause is found. And as this court said in, I believe it was a Hines case, the vaccine is not the cause of everything that happens within a medically appropriate time frame after vaccination. Well, I understand that, but what I'm confused about is you seem to be questioning whether you agree with what I just stated, and I'm not really understanding what your disagreement is. The special master said the claimant has to rule out other causes, right? He did say that when he was articulating their general verdict. Right, and the only testimony that was offered to rule out other causes was Dr. Byers' testimony, right? That's correct. And he didn't believe Dr. Byers' testimony. That's also correct. So that's the basis for his decision, right? Well, Your Honor, that, if I may, his—well, that is a basis for his decision. He—if I may take a moment, Your Honor. His decision ultimately was that their evidence didn't affirmatively establish that the TD vaccine caused Dr. Walther's condition. One of the things that he noted was that the logical sequence of cause and effect offered by Dr. Byers applied with equal force to any of the other vaccines she received at the same time. Okay, but if the burden of proof had been on you, on the government, to disprove alternative causation, this case might have come out differently, right? Well, that's the issue that I had with the way the question was framed earlier, Your Honor. Even if Petitioner's Counsel doesn't rule out the other vaccines, they have to give this court a credible reason why, in this case, the vaccine, the TD vaccine, was the agent of the harm. They would have to do that even if the other vaccines hadn't been given. Well, yes, but I thought that it was clear that of the first two parts of the special master's test that he found the first one to be satisfied, that is, biological plausibility between the vaccine and the injury. He specifically found that with respect to this vaccine, right? That's right. And you said there was no issue about the medically accepted time frame, right? That's correct, Your Honor. So that leaves the third thing, which is proof eliminating other potential causes. Well, Your Honor, if all that's required for petitioners to establish that the TD vaccine caused ADM in Dr. Monahan is the fact that it's plausible and that it occurred afterwards in a time frame, in a medically appropriate time frame, and Dr. Byers were found credible, then I agree they would win. But the fact that Dr. Monahan often tells us what they need as part of their opinion is a logical sequence of cause and effect. And I think if you look at the special master's decision, that is part of his problem with Dr. Byers' opinion. Her positive logical sequence of cause and effect didn't. But that's not what he says. What he says here is these three things, and the first two of them aren't an issue. Now, are you saying that he applied the wrong standard, that he should have been looking to something other than these three things? Maybe that's what you're saying. I'm saying ultimately it doesn't matter, Your Honor. What doesn't matter? I'm saying ultimately even if his articulation of the standard that what you needed was biologic plausibility, temporal proximity, and to rule out other causes, I'm saying that even if he was incorrect in stating that part of it, which I don't believe he was, then stating that part of their burden was to rule out other causes, because the law requires Dr. Byers to have positive and logical sequence of cause and effect. The result would have been the same. But we don't know. How do we know that? How do we know that he would have done that when he stated the test this way? I don't know that we would have, but what we do know, Your Honor, is that the evidence in the record, in the medical records, doesn't meet petitioner's burden, doesn't establish the case. I think both parties agree with that. This is a little too subtle for me, I guess. Is it not – is it the government's view of our case law that under Shyface and Hafford and those cases that it's the burden on the petitioner to show by a preponderance of evidence that this shot, the DT, was the but-for cause of ADM? That's correct. Is that your view of the law? I believe that's the correct articulation of the standard. So is it – is what you're saying that leaving aside all this alternative cause writing, and there is quite a bit of it in this decision, you take that even off the table, you're still left with his discrediting Dr. Brier's or Byers' on that fundamental issue of whether or not this was the but-for cause of that. I think that's precisely what I'm saying, Your Honor. That is precisely what I'm saying. In that respect, it's not – this isn't a case about alternative cause as it was portrayed. How do we know that? I mean, there's so much language in here. How do we know that if the alternative cause burden of proof were the other way, that the special master would have reached the decision that he did? How do we know that? Well, Your Honor, I admit that's a difficult question. He articulated a standard, and in his decision he rejected Dr. Brier's opinion, and he did it in part by reference to that standard. But what we do know is from this court's case law, what's required of petitioners – But that's not my question. My question is how do we know? You say that even if the alternative causation element were removed, he would still have come out the same way. And my question is how do we know that he would have come out the same way? This is not a question about our case law. It's about the special master's decision-making process. How do we know he would have reached the same result? Well, Your Honor, my position on that, as it's stated in the brief, is that because it's petitioner's burden, in any event, even in the absence of potential alternative causes, it's their burden to show that the TD vaccine was the likely cause. I mean, that's what the special master has to find out, that it was the likely cause of petitioner's condition. And they depended upon Dr. Brier's opinion. But I don't think you're answering my question. I'm sorry, I'm trying to. Let me try it again. He has all this language in here about the petitioner, the claimant, having the burden to disprove alternative causation. And you say that even if he were wrong about that, the government still wins, right? That's correct. Okay. My question is how do we know that the special master here would have reached the same result if he had not relied on the burden of proof concerning alternative causation? Yes, Your Honor. What I was saying is since the parties agree, and I don't think it's – I think it's actually beyond dispute that the medical records themselves don't satisfy petitioner's burden, then they rely on Dr. Brier's opinion. Since her opinion was discredited, even if the question of eliminating the other vaccines as a potential cause wasn't on the table, they can't prevail. Okay, so your answer is that they're conceding that you would win if Dr. Brier's was taken out of the case.  They never made the argument, and I don't believe the record would support the argument, that without Dr. Brier's opinion, the record alone was sufficient to establish that the TD vaccine was the likely cause of the petition. Okay, I understand what you're saying. We'll answer that question. But is it the government's position that the special master erred here in his discussion or analysis of alternative causes? No, Your Honor. We don't believe so. But perhaps the phrasing of it could have been more clear. Petitioner – Well, who in your view had the burden to prove that this was the but-for cause and that it wasn't the result of other causes? Right. Petitioner portrays that as an alternative cause. They portray that as part of respondents' burden in showing a factor unrelated. But what we're really talking about is evidence that essentially speaks to whether they've established that the TD vaccine was the likely cause. Before we get to our affirmative defense of factor unrelated, petitioners have to establish that the vaccine was the likely cause, and that's true in a table case and in an off-table case. This doctor had four shots within a time frame, three or four different shots. And their argument is that one of these shots, the table, the DT, is the one that caused the ADEM. What do they have to show? And it's their burden at the threshold with respect to not just DT causes ADEM. What, if anything, do they have to show with respect to the other shots? I appreciate your question, and there is no bright-line test. There's no specific means by which petitioner must show actual causation. There are a number of ways that they can attempt to do so. In this case, they attempted to do so by establishing, as you mentioned, that it could cause it, and they attempted to do so by pointing to certain case reports that they felt more tightly associated the DT vaccination with Dr. Walter's condition, which they claimed was ADEM. The problem is that those case reports don't tell us anything about the likelihood. And I think the special master anticipated the problem with that portion of the case, but didn't have to discuss it at length, given his finding that Dr. Byers, who was essential to the petitioner's case, was just not credible. But these case reports, you mean the reports of other cases involving this vaccine and the same condition? Well, not the same condition, Your Honor. Similar conditions, and also the other vaccines in unassociated conditions. They were reports of individuals. So, to follow up on Judge Prost's question, does the government argue in these cases that the claimants bear the burden of proof on alternative causation? No, Your Honor. What I was saying is that at the point at which this case failed, it wasn't a question of alternative causation. But I don't understand. I mean, the judge relies on the burden of proof being on the claimant. Did that holding not come as the result of an argument that the government made? In order, Your Honor, I mean, I believe it was partly based on our position. And in order to establish that the TD vaccine was the likely cause, you know, they have to meet their prime official case. They have to prove that by a preponderance. Now, we have the opportunity to undermine that evidence with other scientific evidence. Just like in a table case, they get a presumption of causation if a covered vaccine was given and the person had the first symptom of a covered condition within the time frame. The burden does not then shift to us to affirmatively show another cause. Yet, we still have the opportunity to rebut their case in chief by showing, for instance, that the condition alleged isn't what the petitioner suffers from. This is too subtle for me again. If the petitioner puts on a case and Dr. Byers had not mentioned the other shots, she had simply put on, let's say, a very strong, not discredited case as to why DT caused ADEM. That's a strong case, not discredited. In your view, would she have automatically lost because she didn't make any, put on any evidence with respect to the alternative causes? Or would the burden have shifted to you all to now come up with some arguments with respect to alternative causes? If I understand your question correctly, Your Honor… Does she have to carry that burden, not just with respect to DT causing ADEM, but also get into the other shots and why they didn't cause ADEM as part of her prima facie case? That would be one avenue by which she could try to prove that the TD vaccination was the likely cause. It may not be the only avenue. It's certainly the one that petitioners chose. In order to show that the TD was the likely cause, they have to give the court some reason to believe that it was likely. And we don't feel they put on that case. So in the absence of testimony regarding the other vaccines, in this case, their case was not that strong. In some cases, it might be. And our evidence, as I was trying to respond to Judge Dyke, our evidence went to whether they established, whether they met their burden, whether they established that this vaccine had caused it in the first instance. And the rubric, the framework that petitioner argues for is that the judge, the special magistrate, can't consider any of this evidence when determining whether petitioner met her burden, that he has to turn a blind eye to evidence in the record rather than doing it on the record as a whole. They are arguing that they should not have the burden of proof to eliminate other possible causes, alternative causation. And are you standing here and saying they should have the burden of proof to eliminate alternative causation? I'm saying, Your Honor, that that is the way they chose to proceed here. I don't understand how they chose to proceed has to do with it. The question is, was the special master correct in putting the burden of proof on them with respect to alternative causation? Yes or no? Was the special master correct about that? I believe in a cause-and-effect case where there are several likely possibilities. In order to show that one of those possibilities is more likely the cause of the condition, it includes, by necessity, evidence as to whether the other causes are less likely. So I do agree with the special master that that is an appropriate framework under which to judge this case. I'm sorry, I hope that my answer was clear enough. I think your answer was clear. Thank you. Thank you. Can I ask you if you think that the courts below will continue to apply the wrong standard unless this court disagrees with Judge Firestone's conclusion that even though he applied the wrong standard, Dr. Byer's opinion testimony, or he rejected her opinion testimony, and that's why he lost? I think it's really dangerous, Your Honor. If the standard for factors unrelated in the vaccine case is mere biological plausibility, and it's going to be upheld at the federal circuit level, and that's what the special master said, and that's the language he used, and in fact, it's not just a word game, but that is the standard he used, that is terribly dangerous. I guarantee you there will be many cases. I guarantee you the Justice Department will use this as a defense. But I heard, maybe I misheard, but Judge Dyke asked respondents' counsel directly if the special master found that the DT vaccine was a cause when he said all of them were plausible causes. And the answer to that question was yes, and that is in fact what he held. He didn't say all of these causes are biologically plausible except the DT vaccine. He said the DT vaccine was one also. So you're saying that the standard ought to be if you find there were five plausible causes, you win? No, he has to do his job at that point. He's got to comply with shy face. I don't have to prove that it was the only cause. You mean the burden is on the government to disprove alternative causation? Well, yeah, absolutely, the statute makes the burden on the government. But regardless of whose burden it is, the special master has to rule on the record as a whole. But why can't the special master say your whole case establishes at best that there were five plausible causes for that? That is not sufficient. You have not carried your burden under shy face and other cases that but for the DT shot, your client would have had ADM. If the judge had just said that in one paragraph, would you be happy? Absolutely. Is there a problem with that? No, this court should remand and tell him to do that. But why is anything – I mean he discredited her evidence for several paragraphs on the actual causation, and then he turns to the others and he said they are also biologically plausible, essentially, but nothing more. No, what he did was, when he said they were biologically plausible, you know whose testimony he relied on? Dr. Byers. You don't see the government's experts name in the decision. He relies on Dr. Byers for the proposition that these are biologically plausible, and then doesn't do his job under shy face. I don't have to prove that it's the only cause. Shy face says – So who has to prove it? The judge? No, the judge has to do his job. He's got to look at the record and decide the case, apply shy face, and say whether or not it is a substantial factor in a but for cause, not the only cause. Shy face requires that of him. You're saying that the special master here found that this vaccine was a cause, right? Oh, he did, absolutely. And you say the government agrees with that. And are you saying that that's enough to satisfy our burden of proof, and then the government must bear the burden of proof on alternative causation, the lack of alternative causes? Yes, I believe that, and I think the statute makes it absolutely clear in subsection 13. But even regardless of that, once I have a covered vaccine that was a cause, a cause of injury, the next step has to be, under shy face, was it a substantial factor in a but for cause. It does not have to be the only cause. Right, but he didn't, I don't see where the special master says, you've satisfied your burden that it was a substantial factor and a but for cause, but because you haven't eliminated the others, you lose. I don't see where he said that. Well, he didn't say it, that's the problem. Right, but maybe he didn't say it because he didn't find it, because there are two paragraphs in which he discredits Dr. Byers' testimony with respect, not to the other vaccinations, but to this one. And the absence of her having presented any persuasive testimony on that but for test, which you recognize, with respect to DT and ADEF. You have to assume all of that, because he found that the DT vaccine was a cause when he listed it. A plausible, biologically plausible. A biologically plausible cause of this case. And you're not saying that that was, she met her burden in terms of a but for test because of that. Oh, I think she absolutely did. But we're all sitting here guessing because he didn't do his job, and it's required. I mean, the Dickerson case makes it absolutely clear it's required. One thing, and I will sit down, but I want you, I mean, I really wonder. I know as an appellate court at this level or the level below, one of the things you don't want to do, you want to look at the legal issues and not the factual issues. I mean, and I come here knowing that. But is there some line where the judge can actually offend an appellate court? I wouldn't try. Yeah, well, I understand that. But my expert, Dr. Byers, testified in writing and orally that those vaccines could not have been the cause. That was her testimony. And there isn't any argument on the other side of that. She said the yellow fever could not have been the cause in this case. But is he not free as a special master hearing the evidence and evaluating it? If she just made hypothetically that blanket statement and then left the witness stand, is he not free to say she didn't substantiate it to my satisfaction? I didn't believe her. She hasn't approved that. Or is he required then to just accept what she said? No, he is free to do his job. But what he did was he said that she testified that these were all causes, and she testified just the opposite. She gave specific reasons the rabies vaccine couldn't possibly have caused this injury. It wasn't in her system long enough to cause the injury. But he lists that as an alternate cause of the injury. I mean, he absolutely turned it on its head. Thank you, Your Honor. Thank you. The case is submitted. The next case is Hanlon v.